1093.20564                                                                              #1461618

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GENESIS VENTURE LOGISTICS, LLC** | **CIVIL ACTION NO: 2:19-cv-13293** |
| **VERSUS** | **DISTRICT JUDGE** |
| **DUNHAM-PRICE GROUP, LLC,**<br> **AND**<br> **DP AGGREGATES, LLC** | **MAGISTRATE JUDGE** |

### COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes plaintiff, Genesis Venture

Logistics, LLC, who files this Complaint for Damages, hereby averring as follows:

### PARTIES

1.

Plaintiff, Genesis Venture Logistics, LLC ("GVL"), is a Louisiana limited liability

company with its principal place of business in Mandeville, Louisiana, and at all relevant times

has been doing business within this federal district.

2.

Made defendant herein is Dunham-Price Group LLC ("Dunham Price"), a Louisiana

limited liability company with its principal place of business in Westlake, Louisiana, and at all

relevant times has been doing business within this federal district.

3.

Made defendant herein is DP Aggregates, LLC ("DP Aggregates"), a Louisiana limited

liability company with its principal place of business in Westlake, Louisiana, and at all relevant

times has been doing business within this federal district.

1

## JURISDICTION

### 4.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333, because this dispute arises out of a maritime contract. GVL designates its claims herein under Rule 9(h) of the Federal Rules of Civil Procedure.

### 5.

Venue is proper in this federal district because the parties' contract for services selects this federal district as the forum for the claims set forth herein (*see* Exhibit 1, Section 15).

## FACTUAL BACKGROUND

### 6.

GVL is a logistics company in the business of transporting goods over water via tug boats and barges.

### 7.

Dunham Price advertises itself as a ready-mix concrete supplier in Louisiana.

### 8.

Venture Global Calcasieu Pass, LLC, Inc. ("Venture Global LNG") is constructing a liquefied natural gas facility in west Louisiana in Cameron Parish, Louisiana ("LNG Construction Project"). Venture Global LNG engaged Kiewit Louisiana Co. ("Kiewit"), a large general contracting company, to complete the LNG Construction Project.

### 9.

At some point in 2018 or 2019, Kiewit subcontracted part of its work to construct the LNG Construction Project to Dunham Price.

10.

In order for Dunham Price to perform its work for Kiewit, Dunham Price needed massive quantities of sand transported by barge from the Dunham Price terminal in Lake Charles, Louisiana, to LNG Construction Project's location.

11.

Dunham Price and GVL entered into a Barge Transportation Agreement in March 2019 (the "Contract," attached hereto as Exhibit 1) for GVL to transport this sand.

12.

The Contract is governed by the General Maritime Law.

13.

Thus, Venture Global LNG contracted with Kiewit, who in turn subcontracted with Dunham Price, who in turn subcontracted with GVL.

14.

Certain material terms of the Contract are as follows:

   a. GVL would provide barge transportation for sand and aggregates between the Dunham Price terminal in Lake Charles, Louisiana ("Point of Origin"), and the LNG Construction Project's location ("Destination");

   b. GVL would also provide certain unloading equipment at the Destination;

   c. Dunham Price agreed that GVL would transport a "guaranteed minimum" of 500,000 tons of sand and aggregates;

   d. The freight rate for the work would be $5.61 per net ton, which was based on the guaranteed minimum of 500,000 tons; and

e.  Dunham Price agreed to pay $350.00 per hour for demurrage due to any substantial delay or inability to accept materials, other than delays caused by the weather.

15.

GVL began performing services for Dunham Price on May 6, 2019 and continued regular shipments of sand as directed by Dunham Price until September 14, 2019, when Dunham Price terminated GVL's work after only 361,681.90 tons had been transported.

**Invoices & Factoring Agreement**

16.

To assist with cash flow during this Contract, GVL entered into a factoring agreement on April 25, 2019, with AmeriFactors Financial Group, LLC ("AmeriFactors"), a Louisiana Limited liability company that is a wholly-owned subsidiary of Gulf Coast Bank and Trust Company, a Louisiana state-chartered bank ("Factoring Agreement").  Under the Factoring Agreement, a certain amount of GVL's invoices to Dunham Price for transportation of freight at $5.61 per ton would be funded by AmeriFactors before Dunham Price paid the invoices. Specifically, GVL would tender its invoice to AmeriFactors, AmeriFactors would obtain a written verification from Dunham Price attesting to the accuracy of the invoice, then AmeriFactors would purchase the invoice from GVL by funding a certain percentage of the verified invoice to GVL. AmeriFactors would then seek payment of the verified invoice directly from Dunham Price. Once Dunham Price paid AmeriFactors for a given invoice, AmeriFactors would reimburse itself of its earlier funding to GVL, remit an additional percentage to GVL, and keep a percentage. In other words, a customary factoring arrangement.

4

17.

Over the course of its Contract with Dunham Price, GVL tendered 15 invoices to AmeriFactors for work GVL performed for Dunham Price.

18.

Dunham Price, through its VP of Aggregate Operations, Rick Sprigg, executed written verifications to AmeriFactors for all of these 15 invoices, except two.

19.

Of the invoices that Dunham Price, through its VP of Aggregate Operations, Rick Sprigg, executed written verifications, the following remain unpaid: GVL invoice nos. 10371, 10374, 10375, 10380, 10385, 10389, and 10398 ("AmeriFactors Unpaid Invoices").

20.

The AmeriFactors Unpaid Invoices total $635,976.70, exclusive of interest and fees.

21.

GVL performed the work reflected on the AmeriFactors Unpaid Invoices.

22.

Of the invoices that Dunham Price has not executed written verification but have been submitted to Dunham Price, the following two invoices remain unpaid: GVL Invoice nos. 10400 and 10402 ("GVL Unpaid Invoices").

23.

The GVL Unpaid Invoices total $175,400.41, exclusive of interest.

24.

GVL performed the work reflected on the GVL Unpaid Invoices.

25.

Due in part to Dunham Price's failure to pay the AmeriFactors Unpaid Invoices and verify the accuracy of the GVL Unpaid Invoices, AmeriFactors has not funded the GVL Unpaid Invoices.

26.

Dunham Price's refusal to pay the AmeriFactors Unpaid Invoices has caused a daily fee to be assessed to GVL under the Factoring Agreement.

27.

Dunham Price's refusal to pay both the AmeriFactors Unpaid Invoices and GVL Unpaid Invoices has caused GVL substantial hardship.

**Dunham Price's Breach of Guaranteed Minimum**

28.

On September 13, 2019, Dunham Price informed GVL that Dunham Price had loaded the last barge with sand at the Point of Origin and that after such barge was unloaded on September 14, 2019, Dunham Price would ship no further sand with GVL for LNG Construction Project. Dunham Price shipped a total of 361,681.9 tons, leaving a shortfall of 138,318.1 tons of the guaranteed minimum.

29.

Under the Contract, GVL preserved its right to pursue consequential damages against Dunham Price, but Dunham Price waived any rights to pursue consequential damages against GVL.

30.

GVL had incurred significant up-front capital costs to perform under the Contract, and Dunham Price's breach caused damages to GVL, including, but not limited to:

    (a) Loss of profit;

    (b) Loss of business opportunity; and

    (c) Additional charter hire and fleeting costs for tugs and barges that could not be put to other tasks given Dunham Price's abrupt breach.

### **Demurrage**

31.

During GVL's work for Dunham Price, GVL incurred substantial demurrage costs.

32.

GVL had chartered tugs and barges to perform its logistical services under the Contract, but often times the tugs and barges would be constrained to remain at the Destination for days due to inability to offload the sand.

33.

The Contract in Section 2 provides "Dunham Price will be subject to the demurrage charged provided herein for any delay or detention of barges in excess of laytime caused by non-compliance with GVL's instructions." Section 2 continues that "demurrage charges shall accrue from the time of placement until the barge is accepted by GVL. Any additional cost or expense incurred by GVL as a result of Dunham Price's improper loading, unloading or cargo distribution will be for the account of Dunham Price."

34.

The Contract further provides that "$350 per hour per boat and 6 barges" will be billed for demurrage.

35.

Demurrage costs between July 2, 2019, and September 3, 2019, total $348,580.08.

7

36.

To date, despite amicable demand, Dunham Price has paid no demurrage costs to GVL.

37.

Under the Contract, GVL is entitled to recover it attorneys' fees and costs incurred in collecting demurrage, in addition to interest.

## Services Outside the Scope of the Contract

38.

During GVL's transportation work for Dunham Price, Dunham Price requested that GVL perform certain other work that was not included within the stated scope of work in the Contract. Specifically, the scope of work for GVL was to transport sand from the Point of Origin to the Destination and for GVL to provide certain unloading equipment.

39.

Specifically excluded in the Contract from the $5.61 freight rate was "the cost of ballasting, demurrage, disposal of excess cargo, wharfage, lockage fees, waterway tolls, user taxes, user charges or any equivalent of the same levied or charged related to the cargo and/or transportation to be performed hereunder or the equipment or fuel surcharges used in performing such transportation or any other similar expense. All expenses required for the movement of Dunham Price's cargo excluded from the freight rate will be for the account of Dunham Price and due when invoiced." *See* Contract, Section 4.

40.

GVL incurred substantial costs in equipment and fuel surcharges used in performing transportation from the Point of Origin to the Destination for extra equipment and fuel surcharge costs to remain, in some instances, for days at a time to shift the barges as requested by Dunham

Price ("Equipment Shifting Work"). The Contract does not contain any description in the scope of work for GVL to perform this Equipment Shifting Work as if such has been included in the freight base rate of $5.61 per ton.

41.

The Equipment Shifting Work was not part of the scope of work under the Contract and, by the terms of the Contract, Section 4, Dunham Price is obligated to pay for the work outside the scope of work of the Contract when invoiced, specifically including the Equipment Shifting Work.

42.

The Equipment Shifting Work was performed by two companies, Dale Martin Offshore, LLC ("Dale Martin Offshore") and Patriot Construction and Industrial, LLC.

43.

Patriot Construction provided the M/V UNCLE JOE for the LNG Construction Project and invoiced GVL $725,057.41 for services, of which $332,453.83 are for Equipment Shifting Work.

44.

Dale Martin Offshore provided a tug, the M/V RIVER ROYAL, to engage solely in Equipment Shifting Work at Dunham Price's dock, Vinton, LA, between June 20, 2019, and August 24, 2019.

45.

Upon information and belief, Dav Godsey, Manager of Dunham Price sought the assistance of an individual, Tommy Henry ("Henry") who owns KZM Marine Services, LLC, to have Henry assist Dunham Price in finding a tug that could perform such Equipment Shifting Work.

46.

Upon information and belief, Dav Godsey, Manager of Dunham Price, Henry, and representatives of Dale Martin made arrangements for Dunham Price to charter or otherwise hire the M/V RIVER ROYAL.

47.

At all times between June 20, 2019, and August 24, 2019, the M/V RIVER ROYAL was under the direction and control of Dunham Price.

48.

At all times between June 20, 2019, and August 24, 2019, the M/V RIVER ROYAL was not under the direction or control of GVL.

49.

GVL first learned of the M/V RIVER ROYAL's use to engage in Equipment Shifting Work on or about August 22, 2019, when Dale Martin presented invoices to GVL.

50.

Dale Martin's invoices for services between June 20, 2019, and August 24, 2019, total $171,832.80.

51.

To the extent GVL is in any way liable to Dale Martin for these services, which is denied, GVL is entitled to be indemnified from said amount by Dunham Price per the terms of the Contract.

## COUNT 1: BREACH OF CONTRACT FOR FAILURE
## TO PAY GVL'S INVOICES FOR FREIGHT

52.

Paragraphs 1-51 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

53.

GVL and Dunham Price entered into the Contract which governed the parties' relationship for the transportation of sand from the Point of Origin to the Destination.

54.

Section 5 of the Contract provides that payments will be made in full within 30 days of the invoice date. Further, Section 5 provides that Dunham Price will pay attorneys' fees incurred in seeking collection of the unpaid freight, demurrage, or other related charges.

55.

Dunham Price has breached the Contract by failing to pay Invoice Nos. 10400 and 10402 within 30 days as required by the Contract. The GVL Unpaid Invoices specify that a finance charge of 2% per month is added when an invoice is past due by 60 days.

56.

Dunham Price does not dispute that GVL actually performed the work reflected on the GVL Unpaid Invoices.

57.

GVL is entitled to damages for Dunham Price's breach of contract in the amount of $175,400.41, plus interest. GVL is also entitled to payment of attorneys' fees and costs incurred in collecting the unpaid amounts.

11

58.

GVL is also entitled to damages from Dunham Price for failure to timely pay the AmeriFactors Unpaid Invoices. Pursuant to the Factoring Agreement, GVL is subjected to a daily fee due to Dunham Price's ongoing refusal to remit payment on the AmeriFactors Unpaid Invoices. Dunham Price is liable to GVL for this lost revenue as well.

## COUNT 2: BREACH OF CONTRACT FOR FAILURE TO PAY DEMURRAGE

59.

Paragraphs 1-58 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

60.

The Contract provides that Dunham Price is responsible for paying demurrage charges for the substantial delays caused by the Venture Global LNG Construction Project.

61.

Dunham Price has refused to pay GVL demurrage Invoice Nos. 10407, 10408, 10409, and 10410, which total $348.580.08.

62.

Dunham Price's failure to pay the invoices for demurrage is a breach of the Contract, in particular Sections 3, 4, and 5 that require Dunham Price to pay the demurrage costs within 30 days of the invoice. Section 5 further provides that GVL is entitled to attorneys' fees incurred in seeking the collection of the unpaid demurrage.

63.

GVL is entitled to damages for demurrage in the amount of $348.580.08, plus interest of 2% per month, attorneys' fees, and costs.

## COUNT 3: BREACH OF CONTRACT FOR FAILURE TO ADHERE TO GUARANTEED MINIMUM

64.

Paragraphs 1-63 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

65.

Dunham Price promised in the Contract that GVL would transport a guaranteed minimum of 500,000 tons of sand.

66.

Dunham Price breached its agreement by failing to have GVL transport a guaranteed minimum of 500,000 tons of sand because Dunham Price instead required GVL to transport only 361,681.90 tons – a 138,318.10 ton shortfall.

67.

Dunham Price's actions in failing to have at least 500,000 tons of sand transported by GVL are in breach of the Contract.

68.

GVL is entitled to reliance damages from Dunham Price as a result of Dunham Price's breach of contract. GVL relied on Dunham Price's agreement to ship 500,000 tons when it set the price of $5.61 per ton in the contract. Had GVL known Dunham Price would not ship the full 500,000 tons with GVL, GVL would have charged $2.20 more per ton.

69.

Consequently, GVL's damages having relied to its detriment on Dunham Price's promise to have GVL transport a minimum of 500,000 tons are $795,700.18.

70.

Additionally, or in the alternative, GVL is entitled to damages based upon Dunham Price's breach as follows:

(a) GVL's lost profits of approximately $106,504.94 from the 138,318.10 ton shortfall;

(b) Costs for idle days of barge charter hire when the barges devoted to the Contract's scope of work could not be reassigned to other work of approximately $74,134.00;

(c) Fleeting costs when the barges devoted to Contract's scope of work could not be reassigned to other work of approximately $33,030.00;

(d) All other damages as may be proven at trial of this matter, including all direct and consequential damages occurring as a result of the breach of contract.

## COUNT 4: BREACH OF CONTRACT RESULTING IN LOST BUSINESS OPPORTUNITY LOST PROFIT AND/OR REVENUE

71.

Paragraphs 1-70 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

72.

GVL committed its assets to work on the LNG Construction Project to the detriment of pursuing other projects.

73.

Had GVL known that Dunham Price would breach its promise to have GVL transport the remaining minimum of 138,318.10 tons of sand, GVL would have been able to market itself and obtain other job(s). Due to Dunham Price's breach of contract, GVL was unable to do so.

74.

GVL suffered damages as a result of Dunham Price's breach, including but not limited to lost business opportunity and lost profits and/or lost revenue for being unable to market itself and obtain other job(s) during the time that GVL had committed itself to work for Dunham Price, believing Dunham Price's promise to have GVL transport a minimum of 500,000 tons of sand over a period of time.

## COUNT 5: BREACH OF CONTRACT FOR FAILURE TO PAY FOR EQUIPMENT SHIFTING WORK OUTSIDE THE SCOPE OF THE CONTRACT

75.

Paragraphs 1-74 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

76.

The Contract between Dunham Price and GVL provides that it relates to the transportation of sand from the Point of Origin to the Destination. The Contract did not include Equipment Shifting Work and the freight rate of $5.61 did not cover such Equipment Shifting Work.

77.

Section 4 of the Contract specifies that "all expenses required for the movement of Dunham Price's cargo excluded from the freight rate will be for the account of Dunham Price and due when invoiced."

78.

The Equipment Shifting Work performed by Patriot Construction and Dale Martin Offshore is not within the scope of work in the Contract and is therefore excluded from the freight rate. Because the Equipment Shifting Work is excluded from the freight rate, Dunham Price is obligated to pay for such work.

79.

Dunham Price has refused to pay for the invoices issued by Dale Martin Offshore for Equipment Shifting Work and has indicated it will not pay the charges by Patriot Construction for the Equipment Shifting Work.

80.

Dunham Price has owes GVL for Patriot Construction's Equipment Shifting Work in the total amount of $332,453.88 and is in breach of contract for refusing to pay for such charges.

81.

Dunham Price has further breached the Contract by failing to pay for the Dale Martin invoices for Equipment Shifting Work.

82.

Dunham Price requested that a tug be provided at the Origin dock to perform Equipment Shifting Work. Dunham Price made this request not to GVL, but to Henry. Henry, not acting on GVL's behalf, found the Dale Martin vessel, the M/V RIVER ROYAL, to perform the work requested by Dunham Price.

83.

The M/V RIVER ROYAL was not chartered by GVL, but was chartered by Dunham Price to perform the Equipment Shifting Work that is outside the scope of the Contract.

84.

Because the Dale Martin vessel was chartered by Dunham Price, Dunham Price should have paid the invoice directly, but did not.

85.

Dunham Price has refused to pay Dale Martin's invoices, which total $171,832.80. Such is a breach of the Contract because Dunham Price is required to pay for such work that is outside the scope of the Contract, and GVL is required to be defended and indemnified by Dunham Price for such costs.

86.

Pursuant to Section 5 of the Contract, GVL is also entitled to payment for its attorneys' fees incurred.

## COUNT 6: DEFAMATION

87.

Paragraphs 1-86 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

88.

Dunham Price has defamed GVL to GVL's customers and contractors by representing that GVL performed poor work for this project and does not pay its subcontractors.

89.

On or about May 21, 2019, Rick Sprigg, an employee of Dunham Price, advised Kiewit that Dunham Price does "not do business the way that GVL does" because GVL was badly performing work under the Contract on the LNG Construction Project. Rick Sprigg made this statement while in the course and scope of his employment with Dunham Price.

90.

GVL is a certified Women's Business Enterprise ("WBEN").

91.

GVL is a certified Disadvantaged Business Enterprise ("DBE").

92.

Dunham Price's actions, through Rick Sprigg and others, are defamatory because it is false and tends to harm the reputation of GVL to the public and hurts GVL's ability to obtain business in the future, particularly as an WBENC and DBE. In particular, such statement by Dunham Price has harmed GVL's reputation with a company that typically sponsors woman-owned businesses like GVL and who, but for this defamatory statement, may have been interested in hiring GVL to perform future work for Kiewit.

93.

In addition to the above statement, Dunham Price's Controller, Christi Duplechain, advised AmeriFactors, GVL's lender, that GVL was not paying any of its vendors. Such was a false statement that has harmed GVL's relationship with AmeriFactors on this and other projects.

94.

That defamatory statement had immediate consequences for GVL because AmeriFactors has frozen any further payment to GVL or purchasing of additional invoices which has caused further strain on GVL's finances and caused GVL significant hardship to GVL's reputation and its ability to obtain financing for future jobs that substantially impacts its ability to do business.

95.

GVL is therefore entitled to damages for the harm caused by the defamatory statements itemized herein in amounts as will be proven at trial.

## COUNT 7: DETRIMENTAL RELIANCE

96.

Paragraphs 1-95 of the Complaint are incorporated herein by reference as if restated herein *in extenso*.

97.

Around the same time GVL and Dunham Price were negotiating the Contract, Dunham Price and/or DP Aggregates also materially induced GVL to enter into a restrictive credit agreement in order to obtain promised work from Dunham Price and/or DP Aggregates for the so called "Driftwood Project."

98.

Dunham Price and/or DP Aggregates promised GVL that if GVL would obtain a line of credit sufficient to cover certain costs for the Driftwood Project, Dunham Price and/or DP Aggregates would award GVL the barge transportation work for Driftwood Project with a guaranteed minimum of 2,500,000 tons of freight to be transported.

99.

Specifically, Dunham Price and/or DP Aggregates induced GVL to obtain a line of credit of $1.6 million, or 10 percent of the total Driftwood Project cost of $16 million, and if such a line of credit was obtained, GVL would be awarded the barge transportation work for the Driftwood Project.

100.

Dunham Price and/or DP Aggregates made these promises to GVL both verbally and in writing.

101.

In particular, Rick Sprigg wrote GVL on January 28, 2019, and induced GVL to obtain such a line of credit. On the same day, GVL wrote Rick Sprigg to advise that GVL would obtain such credit from its lender. At all times Rick Sprigg was working in his capacity as a representative of Dunham Price and/or DP Aggregates.

102.

In reliance on Dunham Price's and/or DP Aggregates' promise to award GVL the Driftwood Project, GVL obtained credit sufficient to meet Dunham Price's and/or DP Aggregates' requirements by way of increasing its credit line under the Factoring Agreement with AmeriFactors and committing to process a greater dollar amount of invoices through the Factoring Agreement.

103.

The Factoring Agreement requires GVL to sell AmeriFactors a minimum dollar amount of invoices and subjects GVL to penalties if the minimum dollar amount of invoices are not sold.

104.

Had Dunham Price not promised GVL that GVL would be awarded the Driftwood Project, GVL would not have entered into the Factoring Agreement which required a minimum dollar value for invoices that included the $1.6 million for the Driftwood Project. GVL would instead have entered into a Factoring Agreement with a lower minimum dollar value for invoices that GVL was obligated to sell under the Factoring Agreement.

105.

GVL relied on Dunham Price's and/or DP Aggregates' promise to award the Driftwood Project to GVL's detriment.

20

106.

Dunham Price and/or DP Aggregates knew or should have known that its representations would induce GVL to rely on such representations to its detriment.

107.

As a result of Dunham Price's and/or DP Aggregates representations, GVL has sustained damages in amounts that will be shown at trial for which Dunham Price is liable.

**WHEREFORE,** the premises considered, plaintiff, Genesis Venture Logistics, LLC, prays that this Complaint for Damages be deemed good and sufficient and that after due proceedings are had there be judgment herein in favor of Genesis Venture Logistics, LLC, and against Dunham Price Group, LLC, and DP Aggregates, LLC, for all available and reasonable damages, including:

(1) Damages for breach of the Contract by Dunham Price Group, LLC, for failure to pay the GVL Unpaid Invoices in the amount of $175,400.41, plus contractual interest, costs, and attorneys' fees;

(2) Damages for breach of the Contract by Dunham Price Group, LLC, for failure to pay the AmeriFactors Unpaid Invoices for contractual interest as assed to GVL, costs, and attorneys' fees;

(3) Damages for breach of the Contract by Dunham Price for failing to pay the demurrage charges of $348,580.08, plus contractual interest, costs, and attorneys' fees;

(4) Damages for breach of the Contract by failing to ship the minimum tonnage, in an amount of at least $795,700.18, plus contractual interest, costs, and attorneys' fees;

(5) Damages for breach of the Contract is causing GVL to suffer lost business opportunity and lost profit and/or revenue;

(6) Damages for breach of the Contract by failing to pay for the Equipment Shifting Work performed by Patriot Construction in the amount of at least $332,453.88, plus contractual interest, costs, and attorneys' fees;

(7) Damages for and/or indemnity from Dunham Price Group, LLC's failure to pay Dale Martin Offshore and/or failure to indemnify GVL for the Dale Martin Offshore invoices in the amount of $171,832.80, plus contractual interest, costs, and attorneys' fees;

(8) Damages for defamatory statements made by Dunham Price Group, LLC; and

(9) For all other relief available under law, in admiralty, or in equity that this action may allow.

Respectfully submitted:

_/s/  *Gavin H. Guillot*_____
Gavin H. Guillot, T.A. (#31760)
Aaron B. Greenbaum (#31752)
Elizabeth B. McIntosh (#36575)
**PUSATERI, JOHNSTON, GUILLOT &
GREENBAUM**
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163
Telephone: (504) 620-2500
Facsimile: (504) 620-2510
Gavin.Guillot@pjgglaw.com
Aaron.Greenbaum@pjgglaw.com
Elizabeth.McIntosh@pjgglaw.com
Attorneys for Genesis Venture Logistics, LLC

22