UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GENESIS VENTURE LOGISTICS, LLC | CIVIL ACTION NO. 2:19-cv-13293 |
| versus | SECTION: F  MAG. DIV.:  3 |
| DUNHAM-PRICE GROUP, LLC AND DP AGGREGATES, LLC | JUDGE FELDMAN |
| | MAG. DOUGLAS |

**DUNHAM-PRICE GROUP, LLC AND DP AGGREGATES, LLC'S
COUNTERCLAIM AGAINST GENESIS VENTURE LOGISTICS, LLC AND THIRD
PARTY COMPLAINT AGAINST NEXGEN MARINE, LLC, GENESIS VENTURE
TRUCKING, AND LORRAINE HYDE**

**NOW INTO COURT**, through undersigned counsel, come Defendants Dunham-Price

Group, LLC and DP Aggregates, LLC ("DP Aggregates"), who file this Counterclaim against

Genesis Venture Logistics, LLC ("Genesis") and Third Party Complaint against NexGen Marine,

LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets,

LLC, Genesis Venture Supply, LLC,  and Lorraine Hyde, and aver as follows:

**PARTIES AND VENUE**

1.

Counterclaimant/Third Party Complainants Dunham-Price Group, LLC and DP

Aggregates, LLC (collectively "DP Aggregates" for purposes of this pleading) are limited

liability companies organized pursuant to the laws of the State of Louisiana.

2.

Defendant-in-Counterclaim Genesis Venture Logistics, LLC is a Louisiana limited liability company headquartered at 10 St. Ann Drive, Mandeville, Louisiana 70471, and whose registered agent, sole manager, and sole member is Lorraine Hyde.

3.

Made Third Party Defendant herein is Genesis Venture Trucking, a limited liability company organized pursuant to the laws of Pennsylvania at address 133 Mahoning Ave., New Castle, Pennsylvania 16102 doing business in the State of Louisiana and the successor in interest and/or alter ego of Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC,  and Lorraine Hyde.

4.

Made Third Party Defendant herein is NexGen Marine, LLC, a limited liability company organized pursuant to the laws of Pennsylvania at address 133 Mahoning Ave., New Castle, Pennsylvania 16102, but which is registered in Louisiana with a principal business office located at 10 St. Ann Drive, Mandeville, Louisiana and whose registered agent, sole manager, and sole member is Lorraine Hyde, and which is the successor in interest and/or alter ego of Genesis Venture Logistics, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC,  and Lorraine Hyde.

5.

Made Third Party Defendant herein is Genesis Venture Investments, LLC, a Louisiana limited liability company headquartered at 10 St. Ann Drive, Mandeville, Louisiana 70471 whose registered agent and sole manager is Lorraine Hyde. Genesis Venture Investments, LLC is the successor in interest and/or alter ego of Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and Lorraine Hyde.

6.

Made Third Party Defendant herein is Genesis Venture Assets, LLC, a Louisiana limited liability company headquartered at 10 St. Ann Drive, Mandeville, Louisiana 70471 whose registered agent and sole manager is Lorraine Hyde. Genesis Venture Assets, LLC is the successor in interest and/or alter ego of Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Supply, LLC, and Lorraine Hyde.

7.

Made Third Party Defendant herein is Genesis Venture Supply, LLC, a Louisiana limited liability company headquartered at 10 St. Ann Drive, Mandeville, Louisiana 70471 whose registered agent and sole manager is Lorraine Hyde. Genesis Venture Supply, LLC is the successor in interest and/or alter ego of Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, and Lorraine Hyde.

8.

Made Third Party Defendant herein is Lorraine Hyde, the sole member and manager of Genesis Venture Logistics, LLC, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and the owner/sole manager of NexGen Marine, LLC and Genesis Venture Trucking, and an individual domiciled in the State of Louisiana at 10 St. Ann Drive, Mandeville, Louisiana 70471.

9.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333 because this dispute arises out of the breach of a maritime contract, because the allegations made in this Counterclaim and Third Party Complaint arise out of the same transactions and/or occurrences as those of the underlying Complaint pursuant to Rule 13 of the Federal Rules of Civil Procedure, and because the named Third Party Defendants may be liable to DP Aggregates.

10.

Venue is proper in the Eastern District of Louisiana because the allegations made in this Counterclaim and Third Party Complaint arise out of the same transactions and/or occurrences as those of the underlying Complaint, and venue is proper for those claims made in Genesis' Complaint by virtue of an enforceable forum selection clause in the parties' contract.

**FACTS**

11.

This lawsuit arises from the wrongful acts of Genesis and Lorraine Hyde related to, and the breach by Genesis of, a contract to perform services between Genesis and DP Aggregates.

### A.     The LNG Project

12.

Venture Global Calcasieu Pass, LLC ("Venture Global") is the owner of a project for the construction of a liquefied natural gas ("LNG") export facility in Cameron Parish, Louisiana (the "LNG Project").

13.

DP Aggregates was hired by Kiewit Louisiana Company ("Kiewit"), general contractor for the LNG Project, to supply sand from Westlake, Louisiana for use by Kiewit on the LNG Project.

14.

To that end, Kiewit and DP Aggregates entered into a Material Contract on April 22, 2019 for the supply of the sand, which was accompanied by a certain Supply Bond. Among other provisions, the Material Contract and the Supply Bond required that DP Aggregates ensure that the LNG Project remain free of any Private Works Act liens related to DP Aggregates' work on the job. DP Aggregates specifically agreed to make payment to any party who provided services in furtherance of DP Aggregates' performance of the Material Contract, no questions asked and regardless of who owed the money. The purpose of these provisions, of course, was to ensure that the LNG Project remained free of liens.

15.

In furtherance of its performance of the Material Contract with Kiewit, DP Aggregates hired Genesis Venture Logistics, LLC ("Genesis") to transport DP Aggregates' sand, by barge, to Kiewit at the LNG Project site (the "Sand Movement Job").

16.

DP Aggregates and Genesis entered into a contract—the Barge Transportation Agreement ("BTA")—to set forth the terms of the Sand Movement Job.

17.

The negotiated arrangement was for DP Aggregates to truck the sand from Westlake to a designated load site, and for Genesis to then provide barges, necessary tugs, and the stevedoring services necessary to the transport of the sand to the LNG Project site.

18.

The BTA between Dunham Price and Genesis stipulated that Genesis would provide six open hopper barges plus two capable tugs, with the idea being that one three-barge flotilla (with its designated tug) would be transporting sand while the other three-barge flotilla (with its designated tug) was loaded. The vessels would work in rotation for maximum efficiency, with each flotilla making one round trip every other day.

**B.    Genesis' Performance of the Barge Transportation Agreement**

19.

Genesis was to charter the vessels required for the performance of the Sand Movement Job—the two tugs and six barges—from third party companies. Genesis was to likewise hire third party contractors to perform stevedoring services to assist in the loading and unloading process, which was Genesis' responsibility per the BTA with DP Aggregates. The subcontractors hired by Genesis included Dale Martin Offshore, LLC, Patriot Construction and Industrial, LLC, and Devall Towing & Boat.

20.

Genesis and DP Aggregates remained in close contact in the spring of 2019 relative to the

start date for the Sand Movement Job, which both parties understood depended on LNG Project general contractor Kiewit's timeline. DP Aggregates gave notice to Genesis sometime near the end of March that the Sand Movement Job would begin on April 29, 2019. Genesis represented to DP Aggregates that it was ready to begin at any time.

21.

Genesis arrived on site over one week late on May 7, 2019. Additionally, despite the terms of the BTA requiring Genesis to provide two tugs and six barges, Genesis arrived on May 7 with only three open hopper barges and one tug. The one tug provided was incapable of pushing three-barge tows as required by the contract, and all of the barges were dirty and required time-consuming cleaning prior to use, further delaying the project start date.

22.

DP Aggregates had several conversations with Genesis in May of 2019 relative to Genesis' failure to abide by the terms of the BTA and the attendant delays caused. Genesis had, via the BTA, agreed not only to provide certain vessels for the transportation of the sand, but had more importantly agreed to transport a certain quantity of sand to Kiewit at the LNG Project site per week. Without the promised vessels, Genesis was unable to transport the contractually agreed upon quantities of sand, putting DP Aggregates in a poor position via-a-vis their customer, Kiewit.

23.

On May 21, 2019, DP sent formal, written notice to Genesis of its deficiencies, and Genesis acknowledged its contractual shortcomings and told DP Aggregates that it would "rectify all these issues asap":

**From:** Lorraine Hyde <lorraineh@gvlteam.com>
**Sent:** Tuesday, May 21, 2019 1:45 PM
**To:** Rick Sprigg <rsprigg@dunhamprice.com>; Mark Palazzo <markp@gvlteam.com>; Tommy Henry <tommy@kzmmarine.com>; Nick Horbenko <nickh@gvlteam.com>
**Cc:** Rob Price III <rprice3@dunhamprice.com>; Ryan Price <ryan@dunhamprice.com>
**Subject:** RE: Venture Global Status

Hi Rick,

I am so sorry that I am just now receiving your email. It went to my spam folder. Mark Palazzo told me that you sent me an email.

The river conditions have not been favorable the past few months, mainly, due to high river.
This is still an issue causing major delays throughout the river system. Not to mention the storms that's occurred the past couple weeks.  As of today, any 1200 HP boat and below is wind bound.

We are going to rectify all these issues asap. We have called B&J, and will be calling Bayou Towing as well. Keep in mind, that they are also going experience these weather delays and river issues.

All I can do is apologize at this point and promise you that we will get this corrected. This is not the way I would like to do business either.

Best regards,



Lorraine Hyde
CEO
10 St. Ann
Mandeville, LA 70471
Cell: 985-789-2052
Ofc: 985-900-2150

## 24.

Genesis never complied with the terms of the contract as respects providing two tugs and six barges. Instead, Genesis provided the below:

| DATE | TUG(S) | BARGE(S) | SHIFT BARGE(S) |
|---|---|---|---|
| | | | |
| May 6, 2019 | the ANNIE VICK, which was incapable of pushing three-barge tows | 3 | 0 |
| May 21, 2019 | <span style="color:red">DP sends formal notice to Genesis that its performance is deficient, and Genesis tells DP Aggregates that it will "rectify these issues asap."</span> | | |
| May 23/24, 2019 | the ANNIE VICK, which was incapable of pushing three-barge tows | 5 | 0 |
| June 9, 2019 | MISS LESLIE | 5 | 1 |
| June 22, 2019 | DAVID C. DEVALL | 5 | 2 |
| July 5/6/19, 2019 | DAVID C. DEVALL | 8 | 2 |

25.

As the above demonstrates, Genesis never provided the contractually-agreed upon two tugs and six barges. Instead, Genesis brought in a number of vessels (both barges and tugs) in an attempt to make good on its contractual duty to timely deliver certain quantities of sand. The ANNIE VICK was not substituted with a suitable vessel for the entire month of May, never were there two tugs, and Genesis provided only five barges for the entire months of May and June 2019.

26.

Genesis' failure to provide the promised equipment, or any other viable solution for the sand transportation, caused DP Aggregates to experience significant delays in providing sand to Kiewit. Just as Genesis was contractually bound to transport a certain quantity of sand per week for DP Aggregates, DP Aggregates was contractually bound to Keiwit to deliver a certain quantity of sand.

27.

Having failed to secure the promised two tugs and six barges at the outset of the project, and with delays mounting, Genesis was left scrambling for solutions which would enable it to make good on the BTA. This scrambling is what led Genesis to hire the assortment of vessels described above.

28.

Specifically, Genesis continued to try to make good on its two-tug, six-barge promise for several weeks, however, when that was proven impossible, Genesis' solution was to bring in as many barges as possible to transport the sand—regardless of the fact that at any given time, Genesis had **only one tug** to push the loaded barges all the way to Cameron Pass, and then push

the same unloaded barges back for re-loading.

29.

Ultimately, Genesis hired eight barges total, presumably thinking that the more barges available, the more quickly they could be loaded and unloaded, however, there was still only one single tug hired by Genesis. The excess barges lying in wait led to the creation of a new problem for Genesis: barge fleeting. Now, instead of two tugs each made up with a flotilla of three barges in constant loading and unloading rotation, Genesis had provided one tug and five barges by June and one tug and **eight** barges by July—two more barges than DP Aggregates had ever asked for and a single tug to push them.

30.

Since there was only one tug, while the tug was busy pushing some of the barges either upriver or downriver, the excess barges were often in the way at the loading and unloading docks—particularly at the unloading site operated by Kiewit.

31.

With barges in the way and in need of movement, and the one tug predisposed, Genesis' solution was to hire small fleeting tugs to help move the excess barges around. First, on June 9, one fleeting tug was brought in; later, on June 22, a second was hired by Genesis so that one remained present both at the loading site and at the unloading site at all times.

32.

While the situation was far from ideal, with the several additional vessels brought in by Genesis, Genesis was able to rectify the early delays that it caused. Accordingly, DP Aggregates allowed Genesis latitude in order to ensure the timely movement of the sand via whatever means necessary so long as the sand was delivered to Kiewit in a timely manner.

### C.   Genesis' Sub-Contractors

33.

In late August 2019, Dunham Price began receiving communications from Genesis' subcontractors—specifically Dale Martin, Patriot, and Devall—indicating that they were not receiving payment from Genesis, and were owed hundreds of thousands of dollars each.

34.

Patriot was owed $728,802.38, Devall was owed $462,570.00, and Dale Martin was owed $171,832.80. The total outstanding was $1,363,205.18.

35.

The news was alarming to DP Aggregates, who had made regular payment to Genesis (via Genesis' factoring company, as set forth below) since the outset of the project. At the time that DP Aggregates became aware that Genesis was not paying its subcontractors, DP Aggregates had already paid Genesis $1,186,164.77. Pursuant to Louisiana law (La.R.S. 14:202), a company like Genesis is legally obligated to pay subcontractors out of funds received on a construction contract.

36.

Further, each of Genesis' three subcontractors told DP Aggregates that if Genesis did not make payment, they would file Private Works Act liens on Venture Global's LNG Project in order to ensure payment from some source.

37.

Unfortunately for DP Aggregates, that source would be DP Aggregates. Specifically, the only party which had a contractual relationship with Devall, Patriot, and/or Dale Martin was Genesis Venture Logistics, LLC. DP Aggregates did not hire or otherwise contract with Devall,

Patriot, or Dale Martin at any time. However, pursuant to its contract with LNG Project general contractor Kiewit—and as provided for by the Supply Bond that DP Aggregates executed in connection therewith—in order to protect the LNG Project from liens, DP Aggregates assumed financially responsible for any claims of its own subcontractors, or their sub-subcontractors. Accordingly, DP Aggregates knew that should Genesis fail to pay the $1,363,205.18 to Patriot, Devall, and Dale Martin, it would be DP Aggregates left holding the bag.

38.

At the time that DP Aggregates became aware of Genesis' failure to pay its subcontractors, a further $811,377.11 in Genesis invoices to DP Aggregates were outstanding.

39.

DP Aggregates offered to pay the $811,377.11 owed to Genesis directly to Genesis' subcontractors, but Genesis refused. Afraid that Genesis would not use the money to pay the subcontractors, and that DP Aggregates would end up paying both Genesis *and* Genesis' subcontractors, DP Aggregates halted payments to Genesis pending resolution of the subcontractor payment issue.

40.

Ultimately, Genesis refused to pay Patriot, Devall, or Dale Martin, and each filed Private Works Act liens against the LNG Project. DP Aggregates was therefore forced, as a result of Genesis' acts, to pay Genesis' debts to Patriot, Devall, and Dale Martin, costing DP Aggregates over $1.3 million dollars that Genesis, not DP Aggregates, owed.

### D.   Genesis' Factoring Company, AmeriFactors

41.

In order to fund its participation in the Sand Movement Job upfront, Genesis entered into a Factoring Agreement with a business financing group, AmeriFactors Financial Group LLC ("AmeriFactors").

42.

The arrangement was structured as follows: Genesis would create invoices to DP Aggregates for services rendered in connection with the Sand Movement Job, then sell those invoices to AmeriFactors. AmeriFactors would request DP Aggregates' signature on the invoices, purportedly to prevent DP Aggregates from later asserting claims or defenses to payment, then immediately provide to Genesis approximately 80% of the invoice value. AmeriFactors would then submit the invoices to DP Aggregates for payment. When AmeriFactors received payment from DP Aggregates on the invoice, AmeriFactors would then pay Genesis some other percentage up to 20% of the remaining invoice value.

43.

For all invoices presented to it by AmeriFactors, DP Aggregates was to pay AmeriFactors directly.

44.

Ultimately, DP Aggregates paid AmeriFactors for six (6) invoices totaling $1,186,164.77.

45.

DP Aggregates was presented by AmeriFactors with a further seven (7) invoices for Genesis' work totaling $635,976.70, and, unaware that Genesis was not paying its subcontractors in violation of state law, DP Aggregates signed those seven (7) invoices. Upon information and

belief, AmeriFactors immediately advanced 80% of those seven invoices to Genesis. Once DP Aggregates became aware that Genesis refused to pay the subcontractors, DP Aggregates halted payment on those seven invoices and refused to sign a final two invoices totaling $175,400.41.

46.

Now, in a separate lawsuit pending in Louisiana State Court in Calcasieu Parish, AmeriFactors seeks to recover from DP Aggregates on the seven (7) signed but unpaid invoices totaling $635,976.70, despite the fact that DP Aggregates is already out of pocket over $1.3 million in Genesis' debts.

47.

Additionally, by way of this litigation, Genesis itself seeks to recover on the two unsigned, unpaid invoices totaling $175,400.41, despite the fact that DP Aggregates has already satisfied over $1.3 million in Genesis' debts.

48.

Despite its legal obligation to pay its subcontractors, Genesis has never accounted for where the approximately $1,694,000.00 which it received from DP Aggregates/AmeriFactors has gone, if not to payment of Genesis' costs in relation to the Sand Movement Job (i.e., the subcontractors). Upon information and belief, these monies were diverted to other uses in violation of Louisiana law, including other projects of Genesis, other legal entities, and Lorraine Hyde's personal use.

**E.      NexGen Marine, LLC and Genesis Venture Trucking are Alter-Egos of, and Successors-in-Interest to, Genesis Venture Logistics**

49.

Upon information and belief, Third Party Defendant NexGen Marine, LLC is the alter ego of Genesis Venture Logistics, LLC.

50.

Upon information and belief, Third Party Defendant Genesis Venture Trucking, LLC is the alter ego of Genesis Venture Logistics, LLC.

51.

NexGen Marine, LLC and Genesis Venture Trucking are companies with the same employees, same assets, and same debts as Genesis Venture Logistics, LLC.

52.

Upon information and belief, the funds of Genesis Venture Logistics, LLC are comingled with those of Genesis Venture Trucking, LLC and NexGen Marine, LLC. Further, upon information and belief, monies paid to Genesis Venture Logistics, LLC have been diverted to Genesis Venture Trucking, LLC, to NexGen Marine, LLC, and to Genesis' principals, rather than being used to satisfy debts to Genesis' contractors.

53.

NexGen Marine, LLC performs the same business as Genesis Venture Logistics, LLC, and was created to continue Genesis Venture Logistic, LLC's work but bypass its significant liabilities.

54.

NexGen Marine, LLC is a mere continuation of Genesis Venture Logistics, LLC, and is liable to DP Aggregates for the debts of Genesis Venture Logistics, LLC via the theories of alter ego, successor liability, and/or single business enterprise.

55.

Because the creation of NexGen Marine, LLC was a transaction designed to escape liability, NexGen Marine, LLC is liable to DP Aggregates for the debts of Genesis Venture Logistics, LLC via the theories of alter ego, successor liability, and/or single business enterprise.

**F.     Lorraine Hyde is the alter ego of Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC**

56.

Lorraine Hyde is the sole member and manager and registered agent of not only Genesis Venture Logistics, LLC, but also NexGen Marine, LLC, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC.

57.

Upon information and belief, Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, and Genesis Venture Supply, LLC are all the alter egos of Lorraine Hyde. Hyde's personal funds are comingled with the funds of the various Genesis entities, inducing Plaintiff Genesis Venture Logistics, which was deliberately undercapitalized, and Hyde/Genesis has otherwise disregarded the legal entity such that Genesis is but the alter ego of Lorraine Hyde.

58.

DP Aggregates has therefore been unable to serve Genesis and/or Hyde despite due diligence.

**COUNT 1 – BAD FAITH BREACH OF BARGE TRANSPORTATION AGREEMENT**
**(GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

59.

DP Aggregates restates and realleges Paragraphs 1-58, and incorporates them herein by reference.

60.

Pursuant to the Barge Transportation Agreement, Genesis was obligated to provide two tugs and six barges, all of sufficient size and/or horsepower for their intended purpose, for the transportation of sand on behalf of DP Aggregates.

61.

Genesis and Hyde breached the Barge Transportation Agreement by failing to provide a sufficient number of barges for much of the project, by providing only one insufficient tug for the first portion of the project, and by failing to ever provide two capable tugs at any time.

62.

Genesis was also obligated to provide payment to the subcontractors which it hired in the performance of the Barge Transportation Agreement.

63.

The failure of Genesis and Hyde to provide payment to the subcontracts constitutes a further breach of the contract.

64.

Genesis' and Hyde's conduct as described herein constitutes a bad faith breach of the Barge Transportation Agreement.

65.

These breaches by Genesis caused project delays and damaged DP Aggregates' business relationships with its client, Kiewit, and with Genesis' subcontractors. DP Aggregates is therefore entitled to a judgment by the Court awarding all foreseeable and unforeseeable damages for Genesis' and Hyde's bad faith breach of contract.

**COUNT 2 – BAD FAITH BREACH OF CONTRACT AND/OR OPEN ACCOUNT WITH DEVALL TOWING & BOAT (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

66.

DP Aggregates restates and realleges Paragraphs 1-65, and incorporates them herein by reference.

67.

DP Aggregates satisfied Genesis' debts to Genesis' subcontractor, Devall Towing & Boat, and Devall Towing & Boat executed a Bill of Sale and Assignments whereby Devall assigned to DP Aggregates its claim against Genesis for the unpaid invoices related to the Sand Movement Job.

68.

Accordingly, DP Aggregates is the proper party to assert this open account and/or breach of contract claim against Genesis for Genesis' breach of the contract by and between Genesis Venture Logistics, LLC and Devall Towing & Boat.

69.

Devall provided labor, materials, and services on open account to Genesis for which Genesis owes Devall the principal sum of $171,832.80, plus interest accrued as of this date until

paid. This principal sum is the amount owed under the invoices Devall submitted to Genesis for payment which have never been paid.

70.

Devall informally demanded payment from Genesis on numerous occasions. Service of this pleading constitutes formal demand for payment of these amounts owed to Devall, plus interest accrued as of the payment date. DP Aggregates, as subrogated to the rights of Devall, is legally entitled to collect the principal sum outstanding, plus interest accrued as of the date of payment, plus reasonable attorney's fees, court costs, and other charges, costs, and expenses incurred in collection of all outstanding sums due on open account from Genesis.

71.

Alternatively, to the extent that the foregoing conduct does not constitute an open account, Genesis' and Hyde's conduct as described herein constitutes a bad faith breach of their contract with Devall.

72.

DP Aggregates, as subrogated to the rights of Devall, is therefore entitled to a judgment by the Court awarding all foreseeable and unforeseeable damages for Genesis' and Hyde's bad faith breach of contract with Devall.

**COUNT 3 – BAD FAITH BREACH OF CONTRACT AND/OR OPEN ACCOUNT WITH PATRIOT CONSTRUCTION & INDUSTRIAL, LLC (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

73.

DP Aggregates restates and realleges Paragraphs 1-72, and incorporates them herein by reference.

74.

DP Aggregates satisfied Genesis' debts to Genesis' subcontractor, Patriot Construction & Industrial, LLC, and Patriot executed a Bill of Sale and Assignments whereby Patriot assigned to DP Aggregates its claim against Genesis for the unpaid invoices related to the Sand Movement Job.

75.

Accordingly, DP Aggregates is the proper party to assert this open account and/or breach of contract claim against Genesis for Genesis' breach of the contract by and between Genesis Venture Logistics, LLC and Patriot Construction & Industrial, LLC.

76.

Patriot provided labor, materials, and services on open account to Genesis for which Genesis owes Patriot the principal sum of $728,802.38, plus interest accrued as of this date until paid. This principal sum is the amount owed under the invoices Patriot submitted to Genesis for payment which have never been paid.

77.

Patriot informally demanded payment from Genesis on numerous occasions. Service of this pleading constitutes formal demand for payment of these amounts owed to Patriot, plus interest accrued as of the payment date. DP Aggregates, as subrogated to the rights of Patriot, is legally entitled to collect the principal sum outstanding, plus interest accrued as of the date of payment, plus reasonable attorney's fees, court costs, and other charges, costs, and expenses incurred in collection of all outstanding sums due on open account from Genesis.

78.

Alternatively, to the extent that the foregoing conduct does not constitute an open account, Genesis' and Hyde's conduct as described herein constitutes a bad faith breach of their contract with Patriot.

79.

DP Aggregates, as subrogated to the rights of Patriot, is therefore entitled to a judgment by the Court awarding all foreseeable and unforeseeable damages for Genesis' and Hyde's bad faith breach of contract with Patriot.

**COUNT 4 – BAD FAITH BREACH OF CONTRACT AND/OR OPEN ACCOUNT WITH DALE MARTIN (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

80.

DP Aggregates restates and realleges Paragraphs 1-79, and incorporates them herein by reference.

81.

DP Aggregates satisfied Genesis' debts to Genesis' subcontractor, Dale Martin Offshore, LLC, and Dale Martin executed a Bill of Sale and Assignments whereby Dale Martin assigned to DP Aggregates its claim against Genesis for the unpaid invoices related to the Sand Movement Job.

82.

Accordingly, DP Aggregates is the proper party to assert this open account and/or breach of contract claim against Genesis for Genesis' breach of the contract by and between Genesis Venture Logistics, LLC and Dale Martin Offshore, LLC.

83.

Dale Martin provided labor, materials, and services on open account to Genesis for which Genesis owes Dale Martin the principal sum of 462,570.00, plus interest accrued as of this date until paid. This principal sum is the amount owed under the invoices Dale Martin submitted to Genesis for payment which have never been paid.

84.

Dale Martin informally demanded payment from Genesis on numerous occasions. Service of this pleading constitutes formal demand for payment of these amounts owed to Dale Martin, plus interest accrued as of the payment date. DP Aggregates, as subrogated to the rights of Dale Martin, is legally entitled to collect the principal sum outstanding, plus interest accrued as of the date of payment, plus reasonable attorney's fees, court costs, and other charges, costs, and expenses incurred in collection of all outstanding sums due on open account from Genesis.

85.

Alternatively, to the extent that the foregoing conduct does not constitute an open account, Genesis' and Hyde's conduct as described herein constitutes a bad faith breach of their contract with Dale Martin.

86.

DP Aggregates, as subrogated to the rights of Dale Martin, is therefore entitled to a judgment by the Court awarding all foreseeable and unforeseeable damages for Genesis' and Hyde's bad faith breach of contract with Dale Martin.

**COUNT 5 – CONVERSION (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

87.

DP Aggregates restates and realleges Paragraphs 1-86, and incorporates them herein by reference.

88.

Genesis' and Hyde's acts in failing to pay Genesis' subcontractors with the monies obtained from DP Aggregates from the Sand Movement Job in violation of La. R.S. 14:202, and their diversion of those monies for other uses, to related entities, to the Hyde's personal use, constitute legal conversion for which Genesis and Hyde are liable.

**COUNT 6 – PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)**

89.

DP Aggregates restates and realleges Paragraphs 1-88, and incorporates them herein by reference.

90.

DP Aggregates relied to its detriment on Genesis' and Hyde's representations that Genesis would perform its obligations pursuant to the Barge Transportation Agreement, and that Genesis would pay its subcontractors out of funds received from DP Aggregates, via AmeriFactors, pursuant to La. R.S. 14:202.

91.

Genesis and Hyde knew or should have known that their representations would induce DP Aggregates to rely on Genesis' and Hyde's promises and assurances to perform their obligations under the BTA and to pay its subcontractors.

92.

DP Aggregates' reliance on Genesis' and Hyde's representations was reasonable, and caused DP Aggregates harm.

93.

DP Aggregates is entitled to a judgment by the Court awarding any and all damages as a result of DP Aggregates' reliance on Genesis' and Hyde's representations.

94.

In the alternative, DP Aggregates has been harmed through its dealings with Genesis and Hyde. To the extent that DP Aggregates has no other adequate remedy at law, the doctrine of quantum meruit entitles DP Aggregates to relief.

## COUNT 7 – FRAUDULENT MISREPRESENTATION (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)

95.

DP Aggregates restates and realleges Paragraphs 1-94, and incorporates them herein by reference.

96.

Genesis and Hyde intentionally misrepresented the work and services that they would perform in connection with the BTA.

97.

Genesis and Hyde further intentionally misrepresented their intention to pay subcontractors, including Devall, Patriot, and Dale Martin, for services rendered in connection with the Sand Movement Job with the knowledge and intent that their failure to pay the subcontractors would render DP Aggregates legally liable for their debts.

98.

Genesis and Hyde concocted a scheme to defraud DP Aggregates. First, Genesis and Hyde employed a factoring company, AmeriFactors, to finance their operations and sold their DP Aggregates accounts receivables to AmeriFactors. Genesis and AmeriFactors intent, in part, was to attempt to deprive DP Aggregates of its claims and defenses to payment of Genesis' invoices. Then, Genesis and Hyde intentionally failed to pay Genesis' subcontractors with the knowledge that DP Aggregates was contractually bound to its customer, Kiewit, to do so should Genesis not. Then, Genesis and Hyde transferred the funds received from DP Aggregates (via AmeriFactors) to other business entities and distributed it for personal use by Hyde. Finally, Hyde fled to Pennsylvania in order to avoid service of process in this and other lawsuits.

99.

DP Aggregates justifiably relied upon Genesis' and Hyde's intentional misrepresentations to its detriment.

100.

These acts by Genesis and Hyde caused project delays and damaged DP Aggregates' business relationships with its customer, Kiewit, and with Genesis' subcontractors. DP Aggregates is therefore entitled to a judgment by the Court awarding all damages for Genesis' and Hyde's fraudulent misrepresentations, including costs and attorneys fees, and other damages to the extent permitted by law.

**COUNT 8 – UNJUST ENRICHMENT/QUANTUM MERUIT(GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE) [ALTERNATIVE COUNT IF NO OTHER REMEDY AVAILABLE AT LAW]**

101.

DP Aggregates restates and realleges Paragraphs 1-100, and incorporates them herein by reference.

102.

Genesis and Hyde were enriched by their conduct as described herein.

103.

In particular, Genesis and Hyde were enriched by their scheme to procure payment from DP Aggregates, via factoring company AmeriFactors, and to intentionally fail to pay over $1.3 million in debt to subcontractors with the knowledge and intent that DP Aggregates would become legally liable for those debts.

104.

Genesis and Hyde intended to keep, and in fact did keep, the monies that DP Aggregates paid for Genesis' services rendered on the Sand Movement Job for their own personal gain.

105.

Upon information and belief, Genesis and Hyde also diverted these monies to NexGen Marine, LLC and Genesis Venture Trucking, LLC in a deliberate attempt to avoid Genesis' financial obligations.

106.

Genesis and Hyde intentionally sold Genesis' invoices for the Sand Movement Job to factor AmeriFactors with the further intention of depriving DP Aggregates of its rights to please offset and/or to challenge the validity of the invoices.

107.

DP Aggregates was impoverished by Genesis' and Hyde's conduct as described herein, and there is an absence of justification for their acts and omissions, entitling DP Aggregates to recovery.

## COUNT 9 – NEGLIGENCE & GROSS NEGLIGENCE (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)

108.

DP Aggregates restates and realleges Paragraphs 1-107, and incorporates them herein by reference.

109.

Genesis and Hyde owed DP Aggregates the duty of exercising reasonable care in the execution of the Barge Transportation Agreement, but failed to exercise such care.

110.

As a direct and proximate cause of Genesis' and Hyde's negligence, DP Aggregates suffered damages which were foreseeable.

## COUNT 10 – LOUISIANA UNFAIR TRADE PRACTICES ACT (GENESIS VENTURE LOGISTICS, LLC AND LORRAINE HYDE)

111.

DP Aggregates restates and realleges Paragraphs 1-110, and incorporates them herein by reference.

112.

Genesis and Hyde violated the Louisiana Unfair Trade Practices Act ("LUTPA"), which bars unfair and deceptive acts or practices in the conduct of business.

113.

As described herein, Genesis and Hyde have engaged in false, misleading, and deceptive business practices.

114.

Genesis and Hyde are therefore liable for damages pursuant to the LUTPA, including an award of attorney's fees.

115.

Notice of this Counterclaim and Third Party Complaint will be sent to the Attorney General pursuant to La.R.S. 51:1409(B) immediately upon filing.

## COUNT 11 – LIABILITY OF LORRAINE HYDE PERSONALLY AND AS THE ALTER EGO OF GENESIS

116.

DP Aggregates restates and re-allages Paragraphs 1-115, and incorporates them herein by reference.

117.

Lorraine Hyde is the sole member and manager of Genesis Venture Logistics, LLC. Because, as set forth herein, she is the alter ego of Genesis, Lorraine Hyde is liable for the debts of Genesis and for her role in causing knowing or deliberate financial harm to DP Aggregates.

118.

Further, to the extent that DP Aggregates is found liable to AmeriFactors in the Calcasieu Parish proceedings, Lorraine Hyde is liable to DP Aggregates for those sums. Lorraine Hyde executed a personal guarantee in connection with the Factoring Agreement between Genesis and AmeriFactors, personally guaranteeing the accounts sold to AmeriFactors, and DP Aggregates is

a third party beneficiary to that contract. Accordingly, to the extent that AmeriFactors is owed any money in connection with these events, it is owed by Hyde/Genesis, not by DP Aggregates.

119.

Upon information and belief, Lorraine Hyde is in Pennsylvania evading service of process on her own behalf and on behalf of Genesis in not only this lawsuit, but multiple lawsuits.

**COUNT 12 – ALTER EGO/SUCCESSOR LIABILITY SINGLE BUSINESS ENTERPRISE (NEXGEN MARINE, LLC, GENESIS VENTURE TRUCKING, GENESIS VENTURE INVESTMENTS, LLC, GENESIS VENTURE ASSETS, LLC, GENESIS VENTURE SUPPLY, LLC, AND LORRAINE HYDE)**

120.

DP Aggregates restates and realleges Paragraphs 1-119, and incorporates them herein by reference.

121.

Under Louisiana law, the "Single Business Enterprise" theory can be invoked in certain situations to break down fictitious walls between affiliated legal entities, such that one affiliate company can be liable for the debts of another.

122.

In determining whether the single business enterprise theory applies, Louisiana courts apply an 18 factor/totality of the circumstances test as follows:

- Identity or substantial identity of ownership;

- Common directors or officers;

- Unified administrative control of corporations whose business functions are similar or supplementary;

- Directors and officers of one corporation act independently of the interests of that corporation;

- Corporation financing another corporation;

- Inadequate capitalization

- Corporation causing the incorporation of another affiliated corporation;

- Corporation paying the salaries and other expenses or losses of another corporation;

- Receiving no business other than that given to it by its affiliated corporations;

- Corporation using the property of another corporation as its own;

- Noncompliance with corporate formalities;

- Common employees;

- Services rendered by the employees of one corporation on behalf of another corporation;

- Common offices;

- Centralized accounting;

- Undocumented transfers of funds between corporations;

- Unclear allocation of profits and losses between corporations; and

- Excessive fragmentation of a single enterprise into separate corporations.

123.

The relationships between and among Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, and Genesis Venture Supply, LLC satisfy almost all of these factors, including, but not limited to:

- Common ownership by Lorraine Hyde;

- Common directors and officers (i.e., Hyde as the sole member and manager of each);

- Inadequate capitalization of at least Genesis Venture Logistics, LLC;

- Funds from one legal entity being used to satisfy the expenses or losses of affiliated entities;

- All companies occupying the same office space at 10 St. Ann Drive, Mandeville, LA 70471;

- All companies using the property of the others as their own;

- Centralized accounting and bookkeeping;

- Sharing employees such that services rendered by the employees of one entity are for the benefit of the other entities;

- The creation of NexGen Marine, LLC as a transaction designed to escape liability on the parts of Genesis Venture Logistics, LLC and Lorraine Hyde while continuing the same type of work.

124.

Presently, the relationship between and among Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and sole member and manager Lorraine Hyde warrants treating the entities as a single business enterprise, such that NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC should be held liable for the debt of Genesis Venture Logistics, LLC, including the any judgment rendered by this Court.

125.

NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC are further mere continuations of Genesis Venture Logistics, LLC, and are therefore also liable to DP Aggregates for the debts of Genesis Venture Logistics, LLC via the theories of alter ego and successor liability.

126.

NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC are further the alter egos of principal, registered agent, and sole member and manager Lorraine Hyde.

127.

Genesis Venture Trucking, LLC is liable to DP Aggregates for the debts of Genesis Venture Logistics, LLC and Lorraine Hyde via the theories of alter ego, successor liability, and/or single business enterprise.

## CONTRIBUTION/INDEMNITY

If a judgment is rendered against DP Aggregates in the lawsuit entitled *AmeriFactors Financial Group, LLC v. Dunham Price Group, LLC* pending in the Fourteenth Judicial District Court for Calcasieu Parish, State of Louisiana, Civil Action No. 2019-004937, DP Aggregates is entitled to indemnity and contribution from Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and Lorraine Hyde for all sums for which DP Aggregates is cast in judgment, as well as for all fees incurred in defending that lawsuit, because those sums are due and owing by Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and Lorraine Hyde, not by DP Aggregates.

## JURY DEMAND

128.

DP Aggregates restates and realleges Paragraphs 1-127, and incorporates them herein by reference.

{N3999069.1}

- 32 -

129.

DP Aggregates demands a trial by jury on all issues so triable.

**WHEREFORE**, DP Aggregates, LLC and Dunham Price Group, LLP, both on their own behalf and as legal and equitable subrogee and assignee of Devall Towing & Boat, Patriot Construction and Industrial, LLC, and Dale Martin Offshore, LLC, prays that there be judgment in its favor and against Genesis Venture Logistics, LLC, NexGen Marine, LLC, Genesis Venture Trucking, Genesis Venture Investments, LLC, Genesis Venture Assets, LLC, Genesis Venture Supply, LLC, and Lorraine Hyde, for specific damages in excess of $1,000,000.00, plus interest, attorneys fees, and costs, plus all other general, equitable, and other relief to which DP Aggregates may be entitled, whether in law, admiralty, or equity.

Respectfully submitted,

*/s/ Jefferson R. Tillery*

JEFFERSON R. TILLERY (#17831)
C. BARRETT RICE (#30034)
HEATHER L. KIRK (#35192)
JONES WALKER LLP
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana  70170-5100
Telephone: (504) 582-8616
Telecopier: (504) 589-8616
jtillery@joneswalker.com
brice@joneswalker.com
hkirk@joneswalker.com

**Attorneys for Defendants,**
**DP Aggregates, LLC and Dunham-Price**
**Group, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served upon all counsel of record by filing the same in this Court's CM/ECF system this 20th day of April, 2020.

/s/ Jefferson R. Tillery
JEFFERSON R. TILLERY (#17831)

## PLEASE SERVE

NEXGEN MARINE LLC
Through any adult at this address, its principal place of business:
10 St. Ann Drive
Mandeville, LA 70471

LORRAINE HYDE
At her domicile:
10 St. Ann Drive
Mandeville, LA 70471

GENESIS VENTURE TRUCKING
Via long-arm service through any adult at this address, its principal place of business:
133 Mahoning Ave.
New Castle, Pennsylvania 16102

Genesis Venture Investments, LLC
Through any adult at this address, its principal place of business:
10 St. Ann Drive
Mandeville, LA 70471

Genesis Venture Assets, LLC
Through any adult at this address, its principal place of business:
10 St. Ann Drive
Mandeville, LA 70471

Genesis Venture Supply, LLC
Through any adult at this address, its principal place of business:
10 St. Ann Drive
Mandeville, LA 70471